**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| NII-KWAO KOTEY, | : | |
| | : | Civil Action No. 07-3318(JLL) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| KATHERINE A. PEREZ-SOTO, et al. | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

    NII-KWAO KOTEY, Plaintiff pro se
    341 Middle Road
    Hazlet, New Jersey 07730-2340

**LINARES**, District Judge

    Plaintiff Nii-Kwao Kotey ("Kotey"), currently residing at 341 Middle Road in Hazlet, New Jersey, seeks to bring this action in forma pauperis pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. Based on his affidavit of indigence, the Court will grant plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the Complaint.

    At this time, the Court must review the Complaint pursuant to 28 U.S.C. § 1915(e)(2) to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary

relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that the Complaint should be dismissed.

## I. BACKGROUND

Kotey brings this action against the following defendants, Katherine A. Perez-Soto, an Immigration and Customs Enforcement ("ICE") Officer with the United States Department of Homeland Security ("DHS"); Scott Weber, ICE Field Office Director of Detention and Removal Operations, Newark District Field Office; Michael Chertoff, DHS Secretary; and Alberto Gonzales, Attorney General of the United States.  (Complaint, Caption and ¶¶ 6-9).  The following factual allegations by plaintiff are taken from the Complaint and amended Complaint and are accepted for purposes of this screening only.[1]  The Court has made no findings as to the veracity of plaintiff's allegations.

Kotey is a native and citizen of the Republic of Liberia.  He was taken into the custody of the DHS/ICE on August 25, 2006 after an Immigration Judge had ordered Kotey removed from the United States "in absentia" on May 31, 2006.  (Compl., ¶ 10).

Kotey had arrived legally in the United States in 1984 when he was nine years old.  He became a lawful permanent resident ("LPR") on September 13, 1993.  He has two children who are U.S. citizens.  Kotey had applied for naturalization shortly after

---

[1] Kotey submitted an amended Complaint on August 29, 2007.

joining the United States Marine Corps in February 1995. He was enlisted in the Marine Corps for over five years. However, on August 26, 1998, Kotey was convicted in a U.S. court martial proceeding for drug offenses (conspiracy to introduce LSD and possession and distribution of LSD), and was discharged from military service. (Compl., ¶¶ 11-12).

On August 25, 2006, Kotey was taken into custody by five ICE officers because he had failed to appear for his May 31, 2006 removal hearing. Kotey was taken to Newark for photographs and fingerprinting at the Hemisphere Center. He was then placed in the Middlesex County Adult Correction Center in New Brunswick, New Jersey to await his removal from the United States. (Compl., ¶ 13).

Plaintiff has no living relatives or support system in the Republic of Liberia, or any other country except the United States. He states that the Republic of Liberia will not accept repatriation of any citizen who has sworn allegiance or served in the military of a foreign country. Thus, he cannot be removed to the Republic of Liberia. (Compl., ¶ 14).

Kotey further alleges that he has cooperated fully with the ICE in all efforts to attempt his return to the Republic of Liberia. He also requested assistance from the defendants in dealing with the Liberian consulate and embassy to effect his removal. On November 7, 2006, Kotey was transferred to a

detention facility in Pine Prairie, Louisiana. At that facility, plaintiff was told that the Republic of Liberia would not accept Kotey's return because of the nature of his conviction, lack of family ties, and because his citizenship could not be verified. Mr. Charles J. Nippy, from the consulate section of the Liberian Embassy, also told plaintiff, in the presence of an ICE officer, that the Republic of Liberia would not provide travel documents for Kotey because he had sworn allegiance to the United States and served in the U.S. military. (Compl., ¶¶ 16-17).

The ICE then decided to seek plaintiff's removal to a third party nation, Ghana, because this was the native country of Kotey's mother. Kotey alleges that he called the Ghanaian Consulate in New York to request travel documents, but the Ghanaian consulate has not responded to any of plaintiff's requests. (Compl., ¶ 18). Kotey also has submitted written requests for travel documents to 27 other countries, but there has been little response and those countries that did respond declined admittance. (Compl., ¶ 19).

Consequently, Kotey remained in detention pending a removal for more than six months after he was taken into custody on August 25, 2006. During that time, Kotey cooperated with the defendants in trying to effect his removal, but to no avail. He provided defendants with his fingerprints, pictures, signed all documents presented to him, and gave him the names and addresses

4

of all family and friends residing in the United States so that they could help in contacting the embassy and consulate of the Republic of Liberia in the United States. Despite this cooperation, however, the defendants allegedly served plaintiff with a form I-299(a) Warning for Failure to Depart on October 10, 2006. (Compl., ¶¶ 20-22).

Kotey was scheduled for a file custody review on November 25, 2006. On November 22, 2006, he submitted a request for his release from detention pending his removal from the United States. A perfunctory custody review was conducted on December 15, 2006, almost a month after the initial 90-day removal period had expired. Kotey received the written decision on January 5, 2007, ordering his continued detention for "Failure to Comply Pursuant to 8 C.F.R. § 241.4(g)." The decision stated that Kotey had "failed to cooperate" with consular officials of the Embassy of Liberia at the interview conducted in Louisiana. (Compl., ¶¶ 23-26).

On January 18, 2007, Kotey submitted a written request to defendant Weber asking for a second interview with the Liberian consulate. Kotey alleges that defendants never submitted this request for a second interview to the consular official of the Embassy of Liberia. He also contends that he has not acted in any way to hamper or obstruct his removal and defendants had no

5

basis to extend his detention beyond the removal period or to accuse him of non-cooperation.[2] (Compl., ¶ 28).

Kotey further alleges that he was never served with a notice transferring authority over his custody status to the ICE Headquarters Post-Order Detention Unit ("HQPDU"). On January 24, 2007, Kotey requested HQPDU to conduct a file custody review. He never received a response from HQPDU. Consequently, after exhausting his administrative remedies, Kotey filed a habeas petition, pursuant to 28 U.S.C. § 2241, on March 9, 2007, to obtain his release from indefinite detention. This matter was docketed before this Court, Kotey v. Gonzales, et al., Civil No. 07-1136 (JLL). (Compl., ¶¶ 29-30).

On April 17, 2007, three days before the ICE was to provide a response to Kotey's habeas petition, defendants released him from detention under an Order of Supervision. Plaintiff contends that this release was not the result of a custody review, but rather, was legal maneuvering by the ICE for the purpose of denying plaintiff the relief he sought and rendering his petition moot. (Compl., ¶¶ 31-32).

Kotey filed an amended Complaint to add Deportation Officer Michael McMahon, James Shaughnessy and Christopher Croteau, as defendants in this matter. He contends that these defendants were grossly negligent in supervising their subordinates who

---

[2] Kotey contends that if he had not cooperated as required, then defendants could have subjected him to criminal prosecution under 8 U.S.C. § 1253(a), which they never did.

6

failed to perform proper and timely custody reviews and allowed plaintiff to remain in detention for eleven months despite the fact that Kotey was not likely to be removed in the reasonably foreseeable future.  (Amended Complaint, Docket entry no. 3).

In short, Kotey states that defendants detained him for more than the 90-day removal period without conducting meaningful custody reviews.  He also contends that he has proven that he is not a flight risk or danger to the community, and was not likely to be removed in the reasonably foreseeable future.  Kotey further alleges that defendants purposely did not state the condition of electronic monitoring on his Order for release under supervision, which resulted in plaintiff's arrest and re-detention for failing to comply with the condition of electronic monitoring on May 8, 2007.[3]

Kotey now asserts that defendants' acts in continuing his detention for more than the six months violated his right to substantive and procedural due process under the Fifth Amendment, and federal statutory law under 8 U.S.C. §§ 1231(a)(3)(D) and

---

[3]  When Kotey was released under supervision on April 17, 2007, he signed an Order or Notice of Supervised Release.  This notice contained conditions of supervision.  A standard boilerplate form includes the condition of electronic monitoring, but this term was not included on the special terms of supervised release.  Thus, when plaintiff reported to the ICE officer as required under the terms of his release, he was arrested and placed in detention again because Kotey refused to wear an electronic monitoring device.  Kotey subsequently was released from detention after his initial habeas petition was re-opened to address the issue of his re-detention pursuant to plaintiff's refusal to wear an electronic monitoring device.

1231(a)(6), as interpreted by the Supreme Court in Zadvydas v. Davis, 533 U.S. 678 (2001).

Kotey seeks monetary damages in the amount of $1,375,000.00, to compensate him for the physical duress and mental anguish he suffered for each day he spent in detention after January 20, 2007 (@ $25,000 per day).

## II. STANDARDS FOR A SUA SPONTE DISMISSAL

The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief when the plaintiff is proceeding in forma pauperis.  28 U.S.C. § 1915(e)(2)(B).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319,

8

325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).  However, where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34 (1992); Alston v. Parker, 363 F.3d 229 (3d Cir. 2004)(complaint that satisfied notice pleading requirement that it contain short, plain statement of the claim but lacked sufficient detail to function as a guide to discovery was not required to be dismissed for failure to state a claim; district court should permit a curative amendment before dismissing a complaint, unless an amendment would be futile or inequitable); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III. ANALYSIS

#### A. Bivens Action

Kotey alleges that his continued detention beyond January 2007 (more than six months after he was taken into custody on August 25, 2006 based on a final order of removal) violated his right to due process under the Fifth Amendment. He was released under supervision on August 22, 2007, pending his removal, and thus, seeks only monetary damages to compensate him for the time he spent in detention.[4]

Kotey's claims of constitutional violations are asserted against federal officials, and therefore, are governed under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 389 (1971). In Bivens, the Supreme Court held that one is entitled to recover monetary damages for injuries suffered as a result of federal officials' violations of the Fourth Amendment. In doing so, the Supreme Court created a new tort as it applied to federal officers, and a federal

---

[4] Kotey previously filed a habeas petition, on or about March 9, 2007, challenging his indefinite detention and seeking release under supervision pending his removal. Before an answer was due, Kotey was released under supervision on April 17, 2007. However, in May 2007, when Kotey reported to the ICE office as required under the terms of his supervised release, he was taken into custody again because he refused to wear an electronic monitoring device. Kotey renewed his petition for habeas relief on or about May 29, 2007. Shortly after the matter was re-opened, Kotey was released under supervision on August 22, 2007.

counterpart to the remedy created by 42 U.S.C. § 1983.[5]  The Supreme Court has also implied <u>Bivens</u> damages remedies directly under the Eighth Amendment, <u>see</u> <u>Carlson v. Green</u>, 446 U.S. 14 (1980), and the Fifth Amendment, <u>see</u> <u>Davis v. Passman</u>, 442 U.S. 228 (1979).  But "the absence of statutory relief for a constitutional violation does not necessarily mean that courts should create a damages remedy against the officer responsible for the violation."  <u>Schreiber v. Mastrogiovanni</u>, 214 F.3d 148, 152 (3d Cir. 2000) (citing <u>Schweiker v. Chilicky</u>, 487 U.S. 412 (1988)).

In order to state a claim under <u>Bivens</u>, a claimant must show (1) a deprivation of a right secured by the Constitution and laws of the United States; and (2) that the deprivation of the right was caused by an official acting under color of federal law.  <u>See</u> <u>Mahoney v. Nat'l Org. For Women</u>, 681 F. Supp. 129, 132 (D. Conn. 1987)(citing <u>Flagg Brothers, Inc. v. Brooks</u>, 436 U.S. 149, 155-56 (1978)).

The United States has sovereign immunity except where it consents to be sued.  <u>United States v. Mitchell</u>, 463 U.S. 206, 212 (1983).  In the absence of such a waiver of immunity, plaintiff cannot proceed in an action for damages against the

---

[5] <u>Bivens</u> actions are analogous to suits under § 1983 against state officials who violate federal constitutional or statutory rights.  The two bodies of law are not "precisely parallel;" however, there is a "general trend" to incorporate § 1983 law into <u>Bivens</u> suits.  <u>Egervary v. Rooney</u>, 80 F. Supp. 2d 491 (E.D.Pa. 2000)(*citing* <u>Chin v. Bowen</u>, 833 F.2d 21, 24 (2d Cir. 1987)).

11

United States or an agency of the federal government for alleged deprivation of a constitutional right, see FDIC v. Meyer, 510 U.S. 471, 484-87 (1994), or against any of the individual defendants in their official capacities, see Kentucky v. Graham, 473 U.S. 159, 166 (1985) (a suit against a government officer in his or her official capacity is a suit against the government). Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 389 (1971). Here, plaintiff's claims are asserted against federal officials in their individual capacities.

B.  Fifth Amendment Claims

The Complaint asserts violations of Kotey's Fifth Amendment right to due process of law. The Due Process Clause of the Fifth Amendment provides that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. This affords protection to individuals against two types of government action, substantive and procedural. Substantive due process prevents the government from engaging in conduct that "shocks the conscience" regardless of the procedure provided. Rochin v. California, 342 U.S. 165, 172 (1952). Procedural due process requires that government action which deprives a person of life, liberty, or property be implemented in a fair manner. See Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

1.  *Substantive Due Process*

Substantive due process requires courts to scrutinize government action which infringes on an individual's liberty interest.  The stronger the individual's liberty interest, the greater the level of judicial scrutiny.  See Reno v. Flores, 507 U.S. 292, 302 (1993).  To establish a violation of substantive due process, a plaintiff must show deliberate, irrational conduct by a federal officer which shocks the conscience.  See Creason v. City of Washington, 435 F.3d 820, 824 (8th Cir. 2006).

The issue here is whether Kotey's prolonged post-removal-order detention was unlawful as alleged by plaintiff.  Post-removal-order detention is governed by 8 U.S.C. § 1231(a).  Section 1231(a)(1) requires the Attorney General to attempt to effectuate removal within a 90-day "removal period."

> The removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Section 1231(a)(6) permits continued detention if removal is not effected within 90 days.  However, the Supreme Court has held that such post-removal-order detention is subject to a temporal reasonableness standard.  Specifically, once a presumptively-

reasonable six-month period of post-removal-order detention has passed, a resident alien must be released if he can establish that his removal is not reasonably foreseeable.  See Zadvydas v. Davis, 533 U.S. 678 (2001); Clark v. Martinez, 543 U.S. 371 (2005).

Here, the facts before this Court, as alleged in the Complaint, show that Kotey was held in post-removal order detention for slightly longer than six months, from August 25, 2006 until April 17, 2007, when he was first released under supervision pending removal.[6]  Plaintiff received a custody review during this time period, on December 15, 2006.  The facts, as alleged by plaintiff, further demonstrate that the immigration officials were active in trying to effect Kotey's removal to Liberia and later, when it appeared that Liberia would not issue travel documents, defendants attempted to effect plaintiff's removal to Ghana.  Kotey also cooperated in effecting his removal as required under by federal statute.

Under these circumstances, this Court finds that Kotey's detention was not potentially indefinite or unduly long, and that the government acted reasonably in detaining plaintiff for this short period of time while trying to effect his removal.  The government's conduct in this case simply does not rise to a level that would "shock the conscience" sufficient to constitute a

---

[6] This detention period was under eight months, or less than two months beyond the six-month presumptively reasonable time period for post-removal-order detention.

14

substantive due process violation.  Kotey was lawfully detained pursuant to the statutory authority under 8 U.S.C. § 1231(a)(6), and his detention period did not run afoul of the presumptively reasonable period recognized by the Supreme Court in Zadvydas. To the extent that Kotey was detained beyond an exact six month period, the Court finds that the relatively brief period of time was not unduly prolonged and did not violate due process.[7] Further, Kotey alleges no harsh conditions of confinement that would suggest the brief detention was unconstitutional.

This Court also finds that there was no violation of substantive due process when Kotey was return to ICE custody and detention in May 2007 when he refused to wear an electronic monitoring device ("EMD") after he was released under supervision pending removal.  The forms for supervised release provide sufficient notice that electronic monitoring may be required. When plaintiff reported to the ICE officer in May 2007, and the ICE made the EMD a condition of his supervised release, Kotey refused to cooperate.  Consequently, defendants had a legitimate basis to return plaintiff to custodial detention.  Kotey remained

---

[7] Here, Kotey alleges that his filing of a habeas petition to effect his release from detention prompted his eventual release and was thus legal maneuvering by the government.  This Court finds no evidence of bad faith on the part of defendants in releasing plaintiff when they did.  While it may be said that the habeas petition spurred plaintiff's release, Kotey had not been detained for a long period of time and the government was active during the six-month period in trying to effect his removal. Thus, it cannot be said that this brief period of detention was unreasonably prolonged.

in detention only for that period of time in which he contested the requirement that he wear an EMD. He was released shortly thereafter, on or about August 22, 2007, less than three months after he had been returned to detention.

Therefore, because the Complaint does not allege any facts sufficient to suggest that the government acted egregiously to detain plaintiff beyond the six-month presumptively reasonable detention period under Zadvydas, the Complaint fails to state a denial of substantive due process claim.

2.  *Procedural Due Process*

Only when a restriction on liberty survives substantive due process scrutiny does the further question of whether the restriction is implemented in a procedurally fair manner become ripe for review. See United States v. Salerno, 481 U.S. 739, 746 (1987). Here, this Court has determined no violation of substantive due process, so the Court must consider Kotey's claim of a procedural due process violation. This Court finds no merit to plaintiff's claim that he was denied procedural due process.

The facts as alleged in the Complaint show that Plaintiff received a custody review as required under the regulations. He also was released under supervision once he demonstrated that his removal from the United States was not likely to occur in the reasonably foreseeable future. Thus, it is apparent that Kotey received all process that was due him with respect to his

16

detention and release under supervision pending removal.  This claim will be dismissed accordingly for failure to state a claim.

## V. CONCLUSION

For the reasons set forth above, the Complaint will be dismissed for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  An appropriate order follows.



DATED: March 28, 2008                /s/ Jose L. Linares
                                     United States District Judge